UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00134-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs. )<br>)<br>) ORDER<br>)<br>(17) JAMES WALTER DOWDLE, )<br>)<br>Defendant. )<br>)<br>) | |

THIS MATTER comes before the Court on Defendant James Walter Dowdle's Motion for Compassionate Release. (Doc. No. 2903). For the reasons that follow, Defendant's Motion is **DENIED**.

## I. BACKGROUND

On May 16, 2017, a grand jury in the Western District of North Carolina indicted the Defendant, along with eighty-two co-defendants, for Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d). (Doc. No. 3). The First Superseding Bill of Indictment charged the Defendant with the same offense in Count One, with overt acts including possession with intent to distribute marijuana, possession of a firearm, and his personal commission of an attempted armed robbery of a convenience store that took place on January 1, 2014. (Doc. No. 1241). With regards to the January 1, 2014 armed robbery, the Defendant was also charged with Attempted Hobbs Act Robbery (Count 24), and Possession of a Firearm During and In Relation to a Crime of Violence (Count 25). Id.

On July 13, 2018, Defendant pleaded guilty to Count One and Count 25 pursuant to a written plea agreement. (Doc. No. 1751). As set forth in the Factual Basis agreed upon by the

1

parties, the January 1, 2014 incident involved the Defendant's attempted robbery of a convenience store using a firearm. (Doc. No. 1752). The Defendant and two co-conspirators, wearing masks, possessed a rifle and attempted to gain entry to a convenience store located in Shelby, North Carolina in order to rob it. Id. After Defendant and his two co-conspirators failed to gain entry to the store, Defendant resisted arrest and violently assaulted the arresting officers. Id. On January 2, 2019, Defendant was sentenced by the Court to 106 months of imprisonment. (Doc. No. 2367). Defendant is currently serving his sentence in the custody of BOP at FCI Edgefield in South Carolina.

On April 28, 2020, Defendant filed the instant *pro se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 2903). In the Motion, Defendant claims to be at high risk for COVID-19 due to asthma, for which he receives medication in the form of Mometason. Id. As of December 8, 2020, Defendant has not provided any evidence that he has filed an administrative request for release with BOP. Also, as of June 9, 2020, Defendant's facility, FCI Edgefield, has only one confirmed case of COVID-19 infection among inmates.[1]

According to BOP, Defendant has not been considered for home confinement because he does not meet the necessary criteria. Namely, BOP has rejected home confinement for the Defendant because BOP deems the Defendant a high risk for recidivism. In addition, BOP has rejected Defendant because he has not served 50% of his sentence.

## II.  DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

In Defendant's Motion he alleges he is at "high risk for contracting COVID-19 with a fatal outcome due to asthma. (Doc. No. 2903). Defendant states his pre-existing lung condition is treated by an oral steroid ("Mometason") which provides warnings against "being around people

---

[1] https://www.bop.gov/coronavirus/

2

Case 3:17-cr-00134-FDW-DSC   Document 3054   Filed 12/09/20   Page 2 of 7

with infections, colds, or flu." Id. Defendant also alleges he has "no victims" in his case and that he poses "no danger to the community." Id. Defendant claims that FCI Edgefield had "nearly a hundred positive inmate and sixteen to thirty staff cases reported." (Doc. No. 3048). Finally, Defendant requests this Court to waive the BOP requirement in exhausting the administrative remedies and decide this issue now.

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)…[2]

In addition to satisfying subsections (i) or (ii), the reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission…." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement with regard to compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy recognizes the following extraordinary and

---

[2] Addressing factors to reasonably assure the appearance of the person as required and the safety of any other person and the community.

3

Case 3:17-cr-00134-FDW-DSC   Document 3054   Filed 12/09/20   Page 3 of 7

compelling reasons:

> (A) Medical Condition of the Defendant –
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory)….
>>
>> (ii) The defendant is –
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in a combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1; see also 28 U.S.C. § 994(t) (authorizing the Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction). Rehabilitation, by itself, is not an extraordinary and compelling reason for sentence reduction. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, application note 3.

Defendant has failed to demonstrate the existence of "extraordinary and compelling reasons" for supporting his Motion pursuant to § 3582(c)(1)(A)(i). Defendant does not assert that

4

he has a terminal or serious health condition, or deterioration in physical or mental health due to aging, or family circumstances that would support release under subsections A, B, or C of U.S.S.G. § 1B1.13, application note 1.  See (Doc. Nos. 2903, 3048).  Instead, Defendant claims his asthma condition puts him at "high risk for contracting COVID-19 with a fatal outcome." Id.  This is a misrepresentation of the Centers for Disease Control and Prevention (CDC) risk factors on COVID-19.[3]  Based on the information the CDC has at this time, adults with moderate-to-severe asthma *might be at an increased risk* from the virus that causes COVID-19. Id.  This is a far cry from what the Defendant alleges.  Defendant has also failed to provide any documentation of these medical conditions and thus their seriousness cannot be verified.[4]  Defendant also makes a general allegation that he is at risk of contracting COVID-19, which is an insufficient basis for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Hood, No. 5:18-CR-00005-KDB, 2020 WL 2091070, at *3 (W.D.N.C. Apr. 30, 2020) ("Without a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility, the Court will not grant a motion for compassionate release based on COVID-19 concerns.").

---

[3] People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[4] Based on documentation received from FCI Edgefield, the Defendant has received a prescription for an inhaler and a steroid, which appear to be related to an asthma condition. However, Defendant has not submitted any support for the severity of this condition, and chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.  See United States v. Ayon-Nunez, No. 1:16-CR-130-DAD, 2020 WL 704784, at *3 (E.D. Cal. Feb. 12, 2020).

5

Nor does Defendant identify any other circumstances that are "extraordinary and compelling" under subsection D of the applicable policy statement other than the COVID-19 pandemic. See U.S.S.G. § 1B1.13, application note 1(D). Further, there is no evidence that BOP cannot care for Defendant adequately, especially due to his claim that FCI Edgefield had "nearly one hundred inmate cases" of COVID-19 in August while reports as of December 8, 2020 shows only one active inmate case. See (Doc. No. 3048 and n.1). Thus, Defendant has failed to make the required showing under § 3582(c)(1)(A)(i).

Even if Defendant qualified for release due to extraordinary and compelling reasons, § 3582(c)(1)(A) requires that this Court consider the factors listed in 18 U.S.C. § 3553(a) before granting Defendant's motion. These factors, which include "the nature and circumstances of [his] offense," his "history and characteristics," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant," weigh heavily in favor of Defendant's continued imprisonment. 18 U.S.C. § 3553(a). Defendant presents a public safety risk if released based on the seriousness of his crimes and his criminal history. The Defendant was convicted of Racketeering Conspiracy for his involvement in the United Blood Nation, a violent criminal street gang. (Doc. No. 2367). Moreover, the Defendant's conviction was based on his involvement in violent crimes, including an attempted armed robbery. Id. Defendant used a firearm to attempt to rob a convenience store. When officers tried to arrest Defendant, Defendant assaulted the officers, kicking the officers in the face. In addition, Defendant has a significant criminal history including convictions for Possession of Marijuana, Carrying Concealed Gun, Resisting Public Officer, Assault on a Government Official, and Conspiracy to Commit Robbery with a Dangerous Weapon. (Doc. No.

6

2083, *SEALED*). Finally, Defendant has a disciplinary record at FCI Edgefield. On March 26, 2019, Defendant was disciplined for committing the infractions of Refusing to Obey an Order and Being in an Unauthorized Area. (Doc. No. 2919, p. 22).

Considering Defendant's violent conduct, his extensive criminal history, his disrespect for the law, his BOP disciplinary record, and the need to protect the public from him as well as the other 3553(a) factors, the Defendant's Motion for Compassionate Release (Doc. No. 2903) is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 2903) is **DENIED**.

IT IS SO ORDERED.

Signed: December 9, 2020

Frank D. Whitney
United States District Judge